(No. 4278-

CHARLES W. CONRAD, BEN BENTING AND DONALD GARNER, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 9, 1951.*

I. RAY CARTER, Attorney for Claimants.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

LANSDEN, J.

This case was commenced by the filing of a complaint, prepared and signed only by claimant, Charles W. Conrad, who is not a licensed attorney. He sought to make claimants, Ben Benting and Donald Garner, parties to this action, although the complaint states that Garner did not want to join as a party.

At the time of the hearing, claimant, Conrad, was represented by a licensed attorney, but no counsel appeared for claimants, Benting and Garner.

Rule 4 (b) of the Rules of this Court reads in part as follows:

"Only a licensed attorney and an attorney of record in said case will be permitted to appear for or on behalf of a claimant, but a claimant, although not a licensed attorney, may prosecute his own claim in person. . . ."

Therefore, claimants, Benting and Garner, have no standing in this Court, and their claims must be dismissed, but without prejudice.

In this State, the Federal and State governments cooperate to control and eradicate both bovine tuberculosis and bovine infectious abortion, the latter being commonly known as "Bovine Brucellosis" or "Bang's Disease." Ill. Rev. Stat. 1949, Chap. 8, Secs. 87-105, 134-148a. The T. B. test is compulsory, but the Bang's Disease test is voluntary. The expense of both tests, if made by a veterinarian employed by respondent, is borne by respondent.

Conrad was the owner of the two farms in Vermilion County upon which Benting and Garner were tenants.

Cattle on these farms were owned fifty-fifty by Conrad and the respective tenants.

On May 3, 1949, Dr. D. H. Ward, a licensed, accredited veterinarian, employed by respondent, tested the 23 cattle on the Garner farm, and the 8 cattle on the Benting farm for both T. B. and Bang's Disease. A few days later, Dr. Ward informed Garner that his herd contained no T. B. reactors, but did have one Bang's Disease reactor. Dr. Ward then informed Benting that his herd contained no T. B. reactors, but did have two Bang's Disease reactors. Conrad learned this information shortly thereafter, and was furnished copies of the reports of both tests.

Then, a day or so later, Dr. Ward delivered to Conrad a form entitled, "Notice of Shipment of T. B. Reactors for Slaughter." The notice stated that reactors must be slaughtered within fifteen days after reaction to the test, or no State and Federal indemnity would be paid. The notice contained some spaces for the shipper of cattle to fill in, and was required to be mailed to the State Division of Livestock Industry at the stockyards to which the cattle were shipped.

Conrad arranged to ship the three cattle that had reacted to the Bang's Disease test to a commission house at the Union Stockyards, Chicago, Illinois. On the notice covering the one Garner cow, Conrad signed at the bottom a statement of the cow's value. He made no notation on the other notice covering the two Benting cows, but his and Benting's names appeared on the notice as owners.

Both a State and Federal indemnity are paid in the event T. B. reactors are slaughtered. Ill Rev. Stat. 1947, Chap. 8, Sec. 92; 21 U.S.C.A. Sec. 114a, but no indemnity has been paid for the slaughter of Bang's Disease re-

actors since July 15, 1946, the State and Federal governments not having co-operated in this regard. Ill. Rev. Stat. 1945, Chap. 8, Sec. 137.

Since the three cattle were finally sold as T. B. reactors, the selling price was, claims Conrad, less than their value, and he now maintains that Dr. Ward ordered him to sell the cattle, and that respondent should pay him for the loss sustained, because Dr. Ward furnished him with a T. B. reactor slaughter form when the cattle were not T. B. reactors but were Bang's Disease reactors.

Aside from the fact that Conrad knew the cattle were not T. B. reactors before the notice was furnished to him by Dr. Ward, and further that Conrad conceded that he did not examine the notice carefully or completely, there is a fundamental weakness in the position he takes. Before either T. B. or Bang's Disease reactors can be destroyed, the owner must consent thereto. Ill. Rev. Stat. 1947, Chap. 8, Secs. 92, 136. By shipping the cattle, and filling out and mailing the notice, Conrad evidenced his consent to their destruction. The confusion which started when Dr. Ward furnished the wrong notice was compounded when Conrad consented, and his loss is attributable as much to his actions as to those of Dr. Ward.

However, after slaughter and upon inspection, it was found that one of the Benting cows did have T. B., although she had not reacted to the T. B. test. For this cow, which was shipped and sold as a T. B. reactor, claimant is entitled to an indemnity, although no appraisal of her value was made before she left the farm.

The evidence shows that the cow, a pure-bred milking Shorthorn, was worth $450.00. She brought for slaughter $180.32, the difference being $269.68. Respondent is liable for one-third of the difference, or $70.00,

whichever is less. Ill. Rev. Stat. 1947, Chap. 8, Sec. 92. But, Conrad is entitled to only one-half of the sum of $70.00, or $35.00, since he owned only a one-half interest in the cow.

An award is, therefore, entered in favor of claimant, Charles W. Conrad, in the sum of $35.00.

Claims of claimants, Ben Benting and Donald Garner, are dismissed without prejudice.